**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **SANDBOX LOGISTICS, LLC; and** | § | |
| **OREN TECHNOLOGIES, LLC** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:17cv00589** |
| | § | |
| **PROPPANT EXPRESS INVESTMENTS,** | § | **JURY TRIAL DEMANDED** |
| **LLC; PROPPANT EXPRESS** | § | |
| **SOLUTIONS, LLC and LIBERTY** | § | |
| **OILFIELD SERVICES, LLC** | § | |

## PROPX DEFENDANTS' ANSWER AND COUNTERCLAIMS

Defendants Proppant Express Investments, LLC and Proppant Express Solutions, LLC (collectively, "PropX") answer the First Amended Complaint of Plaintiffs (collectively, "SandBox") as follows:

## NATURE OF THE CASE

1.      Plaintiffs bring this action for the willful infringement of five patents, U.S. Patent Nos. 9,296,518; 9,403,626; 9,440,785; 9,446,801; and 9,511,929 (collectively, the "asserted patents"), under the patent laws of the United States, 35 U.S.C. § 1, *et seq.,* Plaintiffs also bring claims under state law for violation of breach of contract.

**RESPONSE:**      PropX admits Sandbox alleges these claims, but denies liability.

## THE PARTIES

2.      Plaintiff SandBox Logistics, LLC ("SandBox Logistics") is a Texas limited liability company with a principal place of business at 3200 Southwest Freeway, 13th Floor,

Houston, Texas 77027.  All members of SandBox Logistics, LLC reside in and are citizens of Texas.

**RESPONSE:**   PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

3.     Plaintiff Oren Technologies, LLC ("Oren Technologies") is a Texas limited liability company with a principal place of business at 18515 Aldine Westfield Road, Houston, Texas 77073.  All members of Oren Technologies reside in and are citizens of Texas.

**RESPONSE:**   PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

4.     Unless it is necessary to distinguish a particular entity, SandBox Logistics and Oren Technologies will be referred to collectively as "Plaintiffs" or "SandBox."

**RESPONSE:**   Plaintiffs' statement does not constitute factual or legal allegations to which a responsive pleading is required.

5.     Defendant Proppant Express Investments, LLC ("PropX Investments") is a Delaware limited liability company having its principal place of business at 950 17th Street, Suite 1320, Denver, Colorado 80202. PropX Investments may be served with process through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

**RESPONSE:**   PropX denies that it resides in Suite 1320, but otherwise admits the allegation.

6.      Defendant Proppant Express Solutions, LLC ("PropX Solutions") is a Delaware limited liability company having its principal place of business at 950 17th Street, Suite 1320, Denver, Colorado 80202. PropX Solutions may be served with process through its registered agent for service, The Corporation Company, 7700 E. Arapahoe Road, Suite 220, Centennial, Colorado 80112-1268, United States. Unless it is necessary to distinguish a particular entity, the two PropX entities will be referred to collectively as "PropX."

**RESPONSE:**      PropX denies that it resides in Suite 1320, but otherwise admits the allegation.

7.      Liberty Oilfield Services, LLC ("Liberty") is a Delaware limited liability company having its principal place of business at 950 17th Street, Suite 2000, Denver, Colorado 80202. Liberty may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

**RESPONSE:**      Admit.

8.      Unless it is necessary to distinguish a particular entity, the PropX entities and Liberty will be referred to collectively as "Defendants."

**RESPONSE:**      Plaintiffs' statement does not constitute factual or legal allegations to which a responsive pleading is required.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. Additionally, this Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

**RESPONSE:**      Admit.

10.     The Court has personal jurisdiction over Liberty because it has, either directly or through intermediaries, conducted business in this District by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and services in both the State of Texas and this District. For example, Liberty maintains a fracking site in the Permian Basin near Odessa, Texas and a sales office at 11757 Katy Freeway, Suite 1300, Houston, Texas 77079.

**RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

11.     The Court also has personal jurisdiction over Liberty because it conducted business in this District by entering into the May 2014 Technology License Master Agreement ("License Agreement") with SandBox. Under the License Agreement's forum selection clause, Liberty consented to the laws of Texas and the jurisdiction of this Court.

**RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

12.     The Court has personal jurisdiction over PropX because it has, either directly or through intermediaries, conducted business in this State by shipping, distributing, offering for sale, selling, and advertising (including the provision of an interactive web page) its products and services in the State of Texas. For example, PropX has made sales in the Permian Basin near Odessa, Texas.

**RESPONSE:**     Admit.

13.     The Court also has personal jurisdiction over the PropX entities because at least one of their respective members is deemed to be a resident of Texas by virtue of being organized

under Texas law and/or maintaining, or having a member that maintains, its principal place of business in the State of Texas and this District.

**RESPONSE:**    PropX admits to personal jurisdiction.


14.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and 1400(b) because Defendants reside in this District or are deemed to reside in this District under 28 U.S.C. §§ 1391(c)(2). Venue is also proper in the District due to the forum selection clause in the License Agreement. In addition, venue is proper in this District because a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this District.

**RESPONSE:**    PropX admits to venue, but denies that it is controlled by a forum selection clause.


## HYDRAULIC FRACTURING

15.    Hydraulic fracturing (or "fracking") is a well-stimulation technique in which deep-rock is fractured by injecting high-pressure liquid into a wellbore to create cracks in the rock formations. This technique is often employed by the oil and gas industry to create new channels in the rock, releasing fossil fuels for extraction and increasing ultimate recovery rates from the reservoir. The development and utilization of this method of recovery for oil and gas over recent years has been exponential. It has stimulated the economy of this country and this State enormously and, when properly developed, it holds promise of enhancing American energy independence.

**RESPONSE:**    Admit.


16.    Proppant is a solid material, such as sand, that is injected into the wellbore with hydraulic fracturing liquid. The introduction of proppant is critical, as the solid material holds the

fractures open after the injection of fluid ceases and hydraulic pressure is removed from the well. With the width of the fractures held open by proppant, flow and extraction of previously hard-to-reach substances is facilitated through the newly created channels. The efficient, economical, and environmentally sound delivery of proppant to well sites is a crucial component of the well fracturing process.

**RESPONSE:**     Admit.

17.     Typically, any hydraulic fracturing operation requires a large amount of proppant, which poses a significant logistical challenge for oil and gas producers. Without a reliable supply of proppant, the operation risks disruptions in the pump schedule or downtime — either of which would render the operation less efficient and less profitable.

**RESPONSE:**     Admit.

18.     Traditional proppant transportation and storage methods often lead to excessive delays, bottlenecks, and increased costs. Additionally, these methods create numerous health and safety risks to jobsite workers and nearby communities.

**RESPONSE:**     Admit based on PropX's understanding of "traditional" proppant transportation and storage systems.

19.     Historically, transportation of proppant from sand mines or storage facilities to the well site used specialty pneumatic tractor-trailers — a combination of a tractor (or truck) with a power take-off unit and a bulk tank trailer originally designed to haul grains and agricultural products. Unlike the general freight fleet, these tractor-trailers are far fewer in number and availability, and are inefficient for the purpose of transporting proppant. Among other challenges, the process of discharging proppant from a single pneumatic trailer into well site

storage can take over an hour. This time-consuming process combined with a limited number of compartments in which proppant can be deposited at any given time — leads to serious delays and bottlenecks, as some hydraulic fracturing operations require hundreds of pneumatic truckloads of proppant. Further, once on the well site, the proppant is transferred from large, unwieldy storage bins between multiple pieces of equipment before being injected into the wellbore. At each transfer point, the proppant is susceptible to loss or contamination, and workers are exposed to health and safety risks from silica dust contained in the proppant and expelled into the air.

**RESPONSE:**      Admit.

### OREN INGENUITY[1]

20.      At least as early as September 2011, John Oren, a co-founder of SandBox, pioneered a proprietary logistics process and containerization solution, which eliminates many challenges associated with traditional proppant delivery and storage. The SandBox solution revolutionized the existing pneumatic proppant delivery methods by employing a modular containerized, gravity-driven proppant delivery and discharge system.

**RESPONSE:**      Deny.

21.      John Oren and his son, Joshua Oren, continued to refine the system in order to design a smaller container that could be shipped along roadways. The result was an embodiment of a modular 10-foot container with a number of advantages over anything then available in the industry. Among these advantages are the container's ability to be transported by the general tractor freight fleet without specialty highway permits or escorts and the ability to be unloaded at the well site in a matter of minutes.

---

1 To the extent Plaintiffs' section headings amount to factual allegations, PropX denies them.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a

belief about the truth of the allegations.

22.      The Orens formed SandBox to commercialize their technology and inventions. On April 5, 2013, SandBox's proprietary system was used for the first time in production by Rock Pile Energy in Williston, North Dakota. Since then, the United States Patent and Trademark Office ("PTO") has issued numerous patents recognizing the ingenuity of the SandBox proppant delivery solution.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a

belief about the truth of the allegations.

## THE PATENTS-IN-SUIT

23.      On March 29, 2016, the PTO duly and legally issued U.S. Patent No. 9,296,518 (the "'518 Patent"), entitled "Proppant Storage Vessel and Assembly Thereof." A true and accurate copy of the '518 Patent is attached as Ex. A.

**RESPONSE:**      PropX denies that it was properly issued, but otherwise admits

to the allegations.

24.      On August 2, 2016, the PTO duly and legally issued U.S. Patent No. 9,403,626 (the "'626 Patent"), entitled "Proppant Storage Vessel and Assembly Thereof." A true and accurate copy of the '626 Patent is attached as Ex. B.

**RESPONSE:**      PropX denies that it was properly issued, but otherwise admits

to the allegations.

25.     On September 13, 2016, the PTO duly and legally issued U.S. Patent No. 9,440,785 (the "'785 Patent"), entitled "Method of Delivering, Storing, Unloading, and Using Proppant at a Well Site." A true and accurate copy of the '785 Patent is attached as Ex. C.

**RESPONSE:**     PropX denies that it was properly issued, but otherwise admits to the allegations.

26.     On September 20, 2016, the PTO duly and legally issued U.S. Patent No. 9,446,801 (the "'801 Patent"), entitled "Trailer Assembly for Transport of Containers of Proppant Material." A true and accurate copy of the '801 Patent is attached as Ex. D.

**RESPONSE:**     PropX denies that it was properly issued, but otherwise admits to the allegations.

27.     On December 6, 2016, the PTO duly and legally issued U.S. Patent No. 9,511,929 (the "'929 Patent"), entitled "Proppant Storage Vessel and Assembly Thereof." A true and accurate copy of the '929 Patent is attached as Ex. E.

**RESPONSE:**     PropX denies that it was properly issued, but otherwise admits to the allegations.

28.     Oren Technologies is the assignee of full title and interest to the patents at issue in this case. SandBox Logistics is the exclusive licensee of those patents.

**RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

## LIBERTY AND SANDBOX ENTER INTO THE LICENSE AGREEMENT

29.     Liberty is a fracking company. In May 2014, SandBox and Liberty entered into the License Agreement, through which SandBox granted Liberty a limited license to use the SandBox process in connection with Liberty's fracking operations.

**RESPONSE:**     Admit.

30.     Pursuant to the forum selection clause in Section 16.2 of the License Agreement, Liberty is prohibited from filing "any Patent Challenge" outside of a state or federal court sitting in Houston, Texas. The License Agreement defines a "Patent Challenge" to mean "a challenge to the validity, patentability, enforceability or non- infringement of any of the Patent Rights (as defined below) or otherwise opposing any of the Patent Rights." The License Agreement defines "Patent Rights" to mean "any United States or foreign patent application or patent owned by or licensed to [SandBox], and all continuations, divisionals, reissues, re-exams, and extensions of term related thereto."

> **RESPONSE:**     PropX admits that Plaintiffs accurately quote the License
> Agreement, but denies any implication that the License Agreement prohibits
> filing *inter partes* reviews

## LIBERTY FORMS PROPX

31.     Liberty originally formed PropX on April 25, 2016. The concept behind PropX is that it would be a joint venture providing both proppant and a proppant delivery solution to customers. PropX would thus be a direct competitor to SandBox.

> **RESPONSE:**     PropX admits its certificates of formation were filed on
> April 25, 2016, and that it was formed to provide a proppant delivery solution to

customers that would compete with SandBox. PropX denies the remaining allegations.

32.     Liberty controlled PropX from its inception. For example, the same person worked simultaneously as both the President of Liberty and the Chief Executive Officer of PropX for several months (and he is still PropX's CEO today). Liberty and PropX share common offices, employees, information technology, and centralized accounting. Liberty pays the wages of PropX employees. Liberty provides support services to PropX for free, and it makes no-interest loans to PropX. Liberty's Chief Executive Officer has even acted as PropX's spokesperson in negotiations with SandBox.

**RESPONSE:**     Deny.

33.     In September 2016, PropX expanded to add new members, including Grit Energy Solutions, LLC ("Grit"). Grit uses a proppant delivery process and technology that infringes certain of Plaintiffs' patents. Liberty and PropX were aware of this infringement because SandBox filed a lawsuit in January 2016 against Grit for patent infringement in the United States District Court for the Southern District of Texas, Galveston Division (the "Grit lawsuit"). The Grit lawsuit is currently pending.

**RESPONSE:**     PropX admits that the corporate documents for Proppant Express Investments, LLC were amended in September 2016 to add new members, including Grit.  PropX admits that the Grit lawsuit was filed in January 2016.  PropX denies the remaining allegations.

34.     PropX has used Grit's system since at least September 2016, despite knowing that it infringes SandBox patents.

**RESPONSE:**      Deny.

## *INTER PARTES* REVIEW OF SANDBOX PATENTS

35.      In late 2016, Liberty and PropX indicated to SandBox that they intended to file a petition for *inter partes* review ("IPR") in the PTO challenging the validity of one or more SandBox patents.

**RESPONSE:**      PropX admits that it told SandBox in late 2016 that a petition for *inter partes* review would be filed challenging the validity of one or more SandBox patents.  PropX denies the remaining allegations.

36.      Based on Defendants' stated intention to file an IPR, SandBox filed a lawsuit in state court in November 2016 in Harris County, Texas (the "state court lawsuit"). SandBox alleged in the state court lawsuit that, while Defendants certainly have the right to challenge the validity of SandBox patents, doing so through an IPR filed with the PTO in Virginia would violate the License Agreement's forum selection clause. SandBox also sought injunctive relief prohibiting Defendants from filing or prosecuting an IPR.

**RESPONSE:**      Admitted, except that PropX lacks sufficient information or knowledge to form a belief as to the truth of the allegation as to SandBox's reason for filing the suit.

37.      On December 13, 2016, the state court denied SandBox's request for a temporary injunction. On February 13, 2017, the state court dismissed the state court lawsuit without prejudice based on its finding that it lacks subject matter jurisdiction.

**RESPONSE:**      Admit.

38.     Now aware that SandBox was prepared to enforce the forum selection clause, Liberty and PropX attempted to circumvent the License Agreement. They did so by having Grit file an IPR petition against one SandBox patent in January 2017.

**RESPONSE:**     Deny.

39.     Grit has no legal or business reasons to pursue an IPR against SandBox. SandBox had even withdrawn the patent at issue (the '341 Patent) from the Grit lawsuit before Grit filed the IPR. Grit is acting as a mere conduit for Liberty and PropX. Upon information and belief, PropX and Liberty are controlling and funding Grit's IPR. Liberty, PropX, and Grit are acting in concert to breach the forum selection clause in the License Agreement.

**RESPONSE:**     PropX admits that SandBox withdrew the '341 Patent from the Grit lawsuit before Grit filed the IPR but without prejudice to refile.  PropX denies the remaining allegations.

## FIRST CAUSE OF ACTION
### Infringement of the '518 Patent by PropX

40.     SandBox incorporates herein each of the allegations above.

**RESPONSE:**     PropX incorporates herein each of the responses above.

41.     PropX's products and/or services that infringe the '518 Patent include, but are not limited to, components of the PropX proppant delivery system.

**RESPONSE:**     Deny.

42.     PropX directly infringes — literally and/or under the doctrine of equivalents — at least Claims 1 and 13 of the '518 Patent by making, using, selling, offering for sale, and/or importing into the United States its PropX system and components thereof.

**RESPONSE:**      Deny.


43.      Claim 1 of the '518 Patent recites:

1.  A proppant storage system for use with hydraulic fracturing operations, the system comprising

a container comprising;

a cavity;

sidewalls that define a lateral periphery of the cavity;

a plurality of support braces affixed to the sidewalls and which define structural support for the sidewalls;

inclined surfaces that define a lower periphery of the cavity, and that depend axially away and extends inwardly from the sidewalls with lateral distance from the sidewalls to define an inclined lower periphery surface;

a bottom;

support members that extend between the bottom and inclined surfaces;

a hatch positioned closely adjacent to the bottom and selectively moveable to an open configuration so that when proppant is positioned in the cavity and comprises particles that have a substantially spherical shape and a tightly graded particle distribution, the proppant readily slides down the inclined surface to the open configuration of the hatch and from within the cavity to a location outside of the cavity and moveable to a closed configuration of the hatch with the hatch aligned with lower ends of the inclined surfaces thereby to block a flow of the proppant from within the cavity, the hatch circumscribed by the sidewalls when the hatch is in the open configuration; and

an opening to the cavity that registers with the hatch.

**RESPONSE:**      Admit.

44.     Claim 13 of the '518 Patent recites:

13.  The proppant storage system of claim 1, wherein the sidewalls have a rigidity suitable for retaining no less than about 30,000 pounds of proppant when positioned therein.

**RESPONSE:**     Admit.

45.     The PropX system is a proppant storage system for use with hydraulic fracturing operations comprising a container. For example, PropX's website, www.propx.com (as of February 21, 2017) describes the PropX system as a "containerized solution for Last-Mile proppant delivery for hydraulic fracturing operations."

**RESPONSE:**     Admit.

46.     The PropX container comprises a cavity; sidewalls that define a lateral periphery of the cavity; a plurality of support braces affixed to the sidewalls and which define structural support for the sidewalls; inclined surfaces that define a lower periphery of the cavity, and that depend axially away and extends inwardly from the sidewalls with lateral distance from the sidewalls to define an inclined lower periphery surface; a bottom; and support members that extend between the bottom and inclined surfaces.

**RESPONSE:**     Deny.

47.     The PropX container comprises a hatch positioned closely adjacent to the bottom and selectively moveable to an open configuration so that when proppant is positioned in the cavity and comprises particles that have a substantially spherical shape and a tightly graded particle distribution, the proppant readily slides down the inclined surface to the open configuration of the hatch and from within the cavity to a location outside of the cavity and moveable to a closed configuration of the hatch with the hatch aligned with lower ends of the

inclined surfaces thereby to block a flow of the proppant from within the cavity, the hatch circumscribed by the sidewalls when the hatch is in the open configuration; and an opening to the cavity that registers with the hatch.

**RESPONSE:**      Deny.

48.      The PropX system comprises a container having sidewalls with a rigidity suitable for retaining no less than about 30,000 pounds of proppant when positioned therein. For example, the LinkedIn page for PropX LLC (as of February 21, 2017) states "PropX containers hold up to 30,000 Lbs of sand."

**RESPONSE:**      PropX denies that it has a container covered by the SandBox patent, but admits the remaining allegations.

49.      PropX has been on notice of the application that issued as the '518 Patent at least since November 8, 2016. On April 10, 2014, an Information Disclosure Statement was filed in the '420 Application, which listed each parent application to the application that issued as the '518 Patent. Pursuant to a Statement Under 37 C.F.R § 3.73(c) filed with the PTO on November 8, 2016, the entire right, title, and interest in the '420 Application was assigned to PropX Solutions.

**RESPONSE:**      Admit.  PropX denies the remaining allegations.

50.      PropX received further notice of the '518 Patent and its infringement of the '518 Patent on August 5, 2016, when Plaintiffs filed the first Amended Complaint in the Grit lawsuit asserting claims for infringement of the '518 Patent against Grit. PropX has purchased assets of Grit, assumed some liability for the patent infringement claims asserted against Grit in the Grit lawsuit, and assumed control of the Grit lawsuit on Grit's behalf.

**RESPONSE:**    PropX denies infringement but admits the remaining allegations.

51.    PropX has received further notice of the '518 Patent through its employment of Mark D'Agostino and Scott D'Agostino, who were owners of Grit at the time PropX acquired assets of Grit, assumed liability for the patent infringement claims asserted against Grit in the Grit lawsuit, and assumed control of the Grit lawsuit on Grit's behalf

**RESPONSE:**    Deny.

52.    PropX has also had notice of the '518 Patent through its affiliation with Liberty. On May 15, 2014 Liberty entered into the License Agreement with SandBox Logistics. This agreement specifically listed U.S. Patent Application No. 13/949,693, which issued as the '518 Patent, as one of the patents and patent applications for which Liberty was granted a limited, non-exclusive, non-transferable license.

**RESPONSE:**    Deny.

53.    By virtue of its control of Grit's defense of the Grit lawsuit, its acquisition of assets from Grit, its employment of co-owners of Grit, its employment of a former executive of Liberty, and Liberty's affiliation with PropX, PropX has been on notice of the '518 Patent and its infringement of the '518 Patent at least since April 2016.

**RESPONSE:**    Deny.

54.    Upon information and belief, PropX knowingly induces infringement of the '518 Patent, including at least Claims 1 and 13, by customers and end-users of the PropX system — including Liberty — with specific intent to induce infringement, and/or with willful blindness to

the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the PropX system and components thereof in the United States. As such, PropX has violated 35 U.S.C. § 271(b).

**RESPONSE:**      Deny.

55.     PropX's inducement of infringement includes, for example, promotion of the PropX system on its website, www.propx.com (as of February 21, 2017). This website promotes the infringing use of the PropX system, for example, by describing it as "[t]he most efficient, economic and environmentally friendly method for delivering proppant."

**RESPONSE:**      PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

56.     As another example of its inducement of infringement, PropX issued a press release, attached hereto as Ex. F, linked to its website, www.propx.com, stating that "Proppant Express Solutions LLC designs, leases and sells the PropX system, and also provides training and support to onsite operations teams in the use of the system."

**RESPONSE:**      PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

57.     PropX contributes to infringement of the '518 Patent, including at least Claims 1 and 13, as provided in 35 U.S.C. § 271(c) by offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '518 Patent and that have no substantial non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '518 Patent. Such sold, offered for sale,

and/or imported components include the PropX system and components thereof, including PropX containers.

**RESPONSE:**     Deny.

58.    PropX's own descriptions of its system demonstrate that it is specially made and/or adapted for use in infringing the '518 Patent. For example, PropX's website, www.propx.com (as of February 21, 2017), states that "PropX is a ... containerized solution for Last-Mile proppant delivery for hydraulic fracturing operations."

**RESPONSE:**     PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

59.    PropX's infringement of the '518 Patent is without license or other authorization.

**RESPONSE:**     Deny.

60.    Because PropX had knowledge of the '518 Patent rights and proceeded to directly and indirectly infringe, PropX's infringement is willful.

**RESPONSE:**     Deny.

61.    PropX's continued infringement of the '518 Patent has damaged and will continue to damage SandBox in the amount to be proven at trial.

**RESPONSE:**     Deny.

62.    Unless and until enjoined by this Court, PropX will continue to directly infringe as well as induce and contribute to infringement of the '518 Patent. PropX's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate

remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

**RESPONSE:**     Deny.


## SECOND CAUSE OF ACTION
### Infringement of the '626 Patent by PropX

63.     SandBox incorporates herein each of the allegations above.

**RESPONSE:**     PropX incorporates herein each of the responses above.


64.     PropX's products and/or services that infringe the '626 Patent include, but are not limited to, components of the PropX proppant delivery system.

**RESPONSE:**     Deny.


65.     PropX directly infringes — literally and/or under the doctrine of equivalents — at least Claim 1 of the '626 Patent by making, using, selling, offering for sale, and/or importing into the United States its PropX system and components thereof.

**RESPONSE:**     Deny.


66.     Claim 1 of the '626 Patent recites:

1.  A container structurally strengthened to transport and store large volumes of proppant effectively therein, the container comprising:

a top;

a bottom, having an outlet formed therein;

sidewalls coupled to the top and bottom, so as to define an interior volume of the container thereby to store the proppant therein;

a plurality of sidewall supports positioned to provide structural support to the sidewalls when large volumes of proppant are positioned within the interior volume, the proppant comprising

sand having a substantially spherical shape and a tightly graded particle distribution, the plurality of sidewall supports including a plurality of support braces extending in a substantially horizontal position and positioned in direct contact with interior surfaces of the sidewalls to enhance support of the sidewalls when the container is filled with the proppant, the container including a container frame structurally arranged to support another container when filled with large volumes of proppant and when positioned in a vertically stacked arrangement thereabove, and the large volumes are at least 30,000 pounds;

ramps downwardly inclined and extending inwardly from the sidewalls to direct the proppant toward the outlet when the proppant is stored therein, at least one support brace of the plurality of support braces being positioned vertically higher than the ramps; and

a hatch positioned proximate the outlet, the hatch being moveable between open and closed positions.

**RESPONSE:**   Admit.

67.   The PropX system includes a container structurally strengthened to transport and store large volumes of proppant effectively therein.

**RESPONSE:**   Admit.

68.   The PropX container comprises a top.

**RESPONSE:**   PropX admits, based upon its understanding of the allegation, but denies that it is an accurate representation of the scope of the asserted claim.

69.   The PropX container comprises a bottom, having an outlet formed therein.

**RESPONSE:**   Deny.

70.   The PropX container comprises a plurality of sidewall supports positioned to provide structural support to the sidewalls when large volumes of proppant are positioned within

the interior volume, the proppant comprising sand having a substantially spherical shape and a tightly graded particle distribution, the plurality of sidewall supports including a plurality of support braces extending in a substantially horizontal position and positioned in direct contact with interior surfaces of the sidewalls to enhance support of the sidewalls when the container is filled with the proppant.

**RESPONSE:**       Deny.

71.    The PropX container comprises a frame structurally arranged to support another container when filled with large volumes of proppant and when positioned in a vertically stacked arrangement thereabove, and the large volumes are at least 30,000 pounds. For example, the LinkedIn page for PropX LLC (as of February 21, 2017) states "PropX containers hold up to 30,000 Lbs of sand."

**RESPONSE:**       PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

72.    The PropX container comprises ramps downwardly inclined and extending inwardly from the sidewalls to direct the proppant toward the outlet when the proppant is stored therein, at least one support brace of the plurality of support braces being positioned vertically higher than the ramps.

**RESPONSE:**       Deny.

73.    The PropX container comprises a hatch positioned proximate the outlet, the hatch being moveable between open and closed positions.

**RESPONSE:**       Deny.

74.    PropX has been on notice of the application that issued as the '626 Patent at least since November 8, 2014. On April 10, 2014, an Information Disclosure Statement was filed in the '420 Application, which listed two of the three parent applications to the application that issued as the '626 Patent. Pursuant to a Statement Under 37 C.F.R § 3.73(c) filed with the PTO on November 8, 2016, the entire right, title, and interest in the '420 Application was assigned to PropX Solutions.

> **RESPONSE:**    PropX admits that an Information Disclosure Statement was filed in the '420 Application, which listed two of the three parent applications to the application that issued as the '626 Patent. PropX admits that the entire right, title, and interest in the '420 Application was assigned to PropX Solutions. PropX denies the remaining allegations.

75.    PropX received further notice of the '626 Patent and its infringement of the '626 Patent on August 5, 2016 when Plaintiffs filed the first Amended Complaint in the Grit lawsuit asserting claims for infringement of the '626 Patent against Grit. PropX Solutions has purchased assets of Grit, assumed some liability for the patent infringement claims asserted against Grit in the Grit lawsuit, and assumed control of the Grit lawsuit on Grit's behalf.

> **RESPONSE:**    PropX Solutions admits that it has purchased assets of Grit, assumed some liability for the patent infringement claims asserted against Grit in the Grit lawsuit, and assumed control of the Grit lawsuit on Grit's behalf.  PropX denies the remaining allegations.

76.    PropX has received further notice of the '626 Patent through its employment of Mark D'Agostino and Scott D'Agostino, who were owners of Grit at the time PropX acquired

Grit's assets, assumed liability for the patent infringement claims asserted against Grit in the Grit lawsuit, and assumed control of the Grit lawsuit on Grit's behalf.

**RESPONSE:**    Deny.

77.    PropX has also had notice of the '626 Patent through its affiliation with Liberty. On May 15, 2014 Liberty entered into the License Agreement with SandBox Logistics. This agreement specifically listed U.S. Patent Application No. 13/949,693, which issued as the '518 Patent, as one of the patents and patent applications for which Liberty was granted a limited, non-exclusive, non-transferable license. The '626 Patent is a continuation of the '518 Patent.

**RESPONSE:**    PropX denies that it had notice of the '626 Patent through its affiliation with Liberty.  PropX admits that the '626 Patent purports to be a continuation of the '518 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

78.    By virtue of its control of Grit's defense of the Grit lawsuit, its acquisition of assets from Grit, its employment of co-owners of Grit, its employment of a former executive of Liberty, and Liberty's affiliation with PropX, PropX has been on notice of the '626 Patent and its infringement of the '626 Patent at least since April 2016.

**RESPONSE:**    Deny.

79.    Upon information and belief, PropX knowingly induces infringement of the '626 Patent, including at least Claim 1, by customers and end-users of the PropX system — including Liberty — with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing,

advertising, promotion, support, and distribution of the PropX system and components thereof in the United States. As such, PropX has violated 35 U.S.C. § 271(b).

**RESPONSE:**      Deny.

80.    PropX's inducement of infringement includes, for example, promotion of the PropX system on its website, www.propx.com (as of February 21, 2017). This website promotes the infringing use of the PropX system, for example, by describing it as "[t]he most efficient, economic and environmentally friendly method for delivering proppant."

**RESPONSE:**      PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

81.    As another example of its inducement of infringement, PropX issued a press release, attached hereto as Ex. F, linked to its website, www.propx.com (as of February 21, 2017), stating that "Proppant Express Solutions LLC designs, leases and sells the PropX system, and also provides training and support to onsite operations teams in the use of the system."

**RESPONSE:**      PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

82.    PropX contributes to infringement of the '626 Patent, including at least Claim 1, as provided in 35 U.S.C. § 271(c) by offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '626 Patent and that have no substantial non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '626 Patent. Such sold, offered for sale, and/or imported components include the PropX system and components thereof, including PropX containers.

**RESPONSE:**     Deny.


83.     PropX's own descriptions of its system demonstrate that it is specially made and/or adapted for use in infringing the '626 Patent. For example, PropX's website, www.propx.com (as of February 21, 2017), states that "PropX is a ... containerized solution for Last-Mile proppant delivery for hydraulic fracturing operations."

**RESPONSE:**     PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.


84.     PropX's infringement of the '626 Patent is without license or other authorization.

**RESPONSE:**     Deny.


85.     Because PropX had knowledge of the '626 Patent rights and proceeded to directly and indirectly infringe, PropX's infringement is willful.

**RESPONSE:**     Deny.


86.     PropX's continued infringement of the '626 Patent has damaged and will continue to damage SandBox in the amount to be proven at trial.

**RESPONSE:**     Deny.


87.     Unless and until enjoined by this Court, PropX will continue to directly infringe as well as induce and contribute to infringement of the '626 Patent. PropX's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

**RESPONSE:**     Deny.

## THIRD CAUSE OF ACTION
### Infringement of the '785 Patent by PropX

88.     SandBox incorporates herein each of the allegations above.

**RESPONSE:**     PropX incorporates herein each of the responses above.

89.     PropX's products and/or services that infringe the '785 Patent include, but are not limited to, components of the PropX proppant delivery system and use thereof.

**RESPONSE:**     Deny.

90.     PropX makes, uses, sells, offers for sale, and/or imports the PropX system and components thereof in the United States.

**RESPONSE:**     Admit.

91.     PropX's use of the PropX system and components thereof in the United States directly infringes — literally and/or under the doctrine of equivalents — at least Claim 1 of the '785 Patent.

**RESPONSE:**     Deny.

92.     Claim 1 of the '785 Patent recites:

1.  A method of unloading fracking proppant at a well site for use when hydraulic fracking is to be performed, the method comprising:

    a)  removing a plurality of proppant containers that contain fracking proppant from a trailer of one or more transport road vehicles when positioned adjacent a well site at a location where hydraulic fracking is to be performed, each of the plurality of proppant containers having an outlet positioned at a bottom thereof with a funnel-shaped portion directing the fracking proppant toward the outlet, each of the plurality of proppant containers having a closed and substantially rectangular upper proppant containing portion, the funnel-shaped portion underlying the upper proppant containing portion and having proppant also positioned therein, a pair of vertically-extending end walls and a pair of vertically-extending side walls defining the closed and substantially

rectangular upper proppant containing portion, a frame including a plurality of structural support members positioned to span the end walls and the sidewalls between end frame members to enhance support of the end walls and the side walls when the proppant container is full of fracking proppant, and each of the plurality of containers has an open area positioned about the funnel- shaped portion and below the upper proppant containing portion adjacent a bottom of the respective each of the plurality of proppant containers to allow for visual access of a respective exterior surface of the funnel-shaped portion when the container is full of fracking proppant, the open area being visible through one or more spatial gaps extending through the frame in a location positioned below at least each of the side walls of and above the bottom of the proppant container;

b)  transferring, after removal from the trailer of the one or more transport road vehicles, each of the plurality of proppant containers to a support structure positioned at the well site so that each of the plurality of proppant containers is positioned to overlay a common conveyor positioned at a separate location on the well site from the trailer, the support structure including a plurality of cradles that correspond to the plurality of proppant containers transferred thereto, the common conveyor being positioned to underlie and to be spaced- apart from each of the plurality of cradles;

c)  discharging by gravity feed the fracking proppant contained within each of the plurality of proppant containers when positioned on the support structure and within the plurality of cradles from the outlet positioned at a bottom of each of the plurality of proppant containers so that the fracking proppant passes onto the common conveyor; and

d)  conveying the fracking proppant away from the plurality of proppant containers, after the discharging of the fracking proppant onto the common conveyor, toward a desired location at the well site where hydraulic fracking is to be performed so that the fracking proppant is introduced to fracking fluid for passage into a wellbore at the well site.

**RESPONSE:**   Admit.


93.   The PropX system includes a method of unloading fracking proppant at a well site for use when hydraulic fracking is to be performed.

**RESPONSE:**   PropX admits, based upon its understanding of the allegation, but denies that is an accurate representation of the scope of the asserted claim.

94.     The PropX method comprises the step of removing a plurality of proppant containers that contain fracking proppant from a trailer of one or more transport road vehicles when positioned adjacent a well site at a location where hydraulic fracking is to be performed.

> **RESPONSE:**     PropX lacks sufficient information to admit or deny the allegations set forth in this paragraph and therefore denies the allegation set forth therein.   Specifically, it is unclear what is meant by "[t]he PropX method." PropX further denies that its removes a plurality of proppant containers that contain fracking proppant from a trailer of one or more transport road vehicles when positioned adjacent a well site at a location where hydraulic fracking is to be performed.

95.     The PropX method comprises each of the plurality of proppant containers having an outlet positioned at a bottom thereof with a funnel-shaped portion directing the fracking proppant toward the outlet, each of the plurality of proppant containers having a closed and substantially rectangular upper proppant containing portion, the funnel-shaped portion underlying the upper proppant containing portion and having proppant also positioned therein, a pair of vertically-extending end walls and a pair of vertically- extending side walls defining the closed and substantially rectangular upper proppant containing portion, a frame including a plurality of structural support members positioned to span the end walls and the sidewalls between end frame members to enhance support of the end walls and the side walls when the proppant container is full of fracking proppant, and each of the plurality of containers has an open area positioned about the funnel-shaped portion and below the upper proppant containing portion adjacent a bottom of the respective each of the plurality of proppant containers to allow for visual access of a respective exterior surface of the funnel-shaped portion when the container

is full of fracking proppant, the open area being visible through one or more spatial gaps extending through the frame in a location positioned below at least each of the side walls of and above the bottom of the proppant container.

> **RESPONSE:**   PropX lacks sufficient information to admit or deny the allegations set forth in this paragraph and therefore denies the allegation set forth therein.  Specifically, it is unclear what is meant by "[t]he PropX method."

96.    The PropX method comprises the step of transferring, after removal from the trailer of the one or more transport road vehicles, each of the plurality of proppant containers to a support structure positioned at the well site so that each of the plurality of proppant containers is positioned to overlay a common conveyor positioned at a separate location on the well site from the trailer.

> **RESPONSE:**   PropX lacks sufficient information to admit or deny the allegations set forth in this paragraph and therefore denies the allegation set forth therein.  Specifically, it is unclear what is meant by "[t]he PropX method." PropX further denies that its transfers, after removal from the trailer of the one or more transport road vehicles, each of the plurality of proppant containers to a support structure positioned at the well site so that each of the plurality of proppant containers is positioned to overlay a common conveyor positioned at a separate location on the well site from the trailer.

97.    The PropX method comprises a support structure including a plurality of cradles that correspond to the plurality of proppant containers transferred thereto, the common conveyor being positioned to underlie and to be spaced-apart from each of the plurality of cradles; discharging by gravity feed the fracking proppant contained within each of the plurality of

proppant containers when positioned on the support structure and within the plurality of cradles from the outlet positioned at a bottom of each of the plurality of proppant containers so that the fracking proppant passes onto the common conveyor; and conveying the fracking proppant away from the plurality of proppant containers, after the discharging of the fracking proppant onto the common conveyor, toward a desired location at the well site where hydraulic fracking is to be performed so that the fracking proppant is introduced to fracking fluid for passage into a wellbore at the well site.

> **<u>RESPONSE:</u>**      PropX lacks sufficient information to admit or deny the allegations set forth in this paragraph and therefore denies the allegation set forth therein.   Specifically, it is unclear what is meant by "[t]he PropX method." PropX further denies that it discharges by gravity feed the fracking proppant contained within each of the plurality of proppant containers when positioned on the support structure and within the plurality of cradles from the outlet positioned at a bottom of each of the plurality of proppant containers so that the fracking proppant passes onto the common conveyor and conveys the fracking proppant away from the plurality of proppant containers, after the discharging of the fracking proppant onto the common conveyor, toward a desired location at the well site where hydraulic fracking is to be performed so that the fracking proppant is introduced to fracking fluid for passage into a wellbore at the well site.

98.     PropX has been on notice of the application that issued as the '785 Patent at least since November 8, 2016. On April 10, 2014, an Information Disclosure Statement was filed in the '420 Application, which listed each parent application to the application that issued as the '785 Patent. Pursuant to a Statement Under 37 C.F.R § 3.73(c) filed with the PTO on

November 8, 2016, the entire right, title, and interest in the '420 Application was assigned to PropX Solutions.

**RESPONSE:**     Admit.

99.     Before it was assigned to PropX Solutions, the '420 Application was assigned to Grit.

**RESPONSE:**     Admit.

100.     PropX has received notice of the '785 Patent through its employment of Mark D'Agostino and Scott D'Agostino, who are named inventors of the '420 Application and were owners of Grit when the '420 Application was assigned to Grit.

**RESPONSE:**     Deny.

101.     PropX has also had notice of the '785 Patent through its affiliation with Liberty. On May 15, 2014 Liberty entered into the License Agreement with SandBox Logistics. This agreement specifically listed U.S. Patent Application Nos. 13/628,702 and 13/555,635, the parent applications of the '785 Patent, as two of the patents and patent applications for which Liberty was granted a limited, non-exclusive, non-transferable license. "Patent Rights," as defined in the agreement, includes "all continuations" of the patents and patent applications for which Liberty was granted a limited, non-exclusive, non-transferable license.

**RESPONSE:**     PropX denies that it received notice of the '785 Patent through its affiliation with Liberty.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

102.    By virtue of its acquisition of Grit's '420 Application, its employment of co-owners of Grit, its employment of a former executive of Liberty, and Liberty's affiliation with PropX, PropX has been on notice of the '785 Patent and its infringement of the '785 Patent at least since the '785 Patent issued on September 13, 2016.

**RESPONSE:**    Deny.

103.    Upon information and belief, PropX knowingly induces infringement of the '785 Patent, including at least Claim 1, by customers and end-users of the PropX system—including Liberty — with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the PropX system and components thereof in the United States. As such, PropX has violated 35 U.S.C. § 271(b).

**RESPONSE:**    PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

104.    PropX's inducement of infringement includes, for example, promotion of the PropX system on its website, www.propx.com (as of February 21, 2017). This website promotes the infringing use of the PropX system, for example, by describing it as "[t]he most efficient, economic and environmentally friendly method for delivering proppant."

**RESPONSE:**    PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

105.    As another example of its inducement of infringement, PropX issued a press release, attached hereto as Ex. F, linked to its website, www.propx.com, stating that "Proppant

Express Solutions LLC designs, leases and sells the PropX system, and also provides training and support to onsite operations teams in the use of the system."

**RESPONSE:**     Deny.

106.     PropX contributes to infringement of the '785 Patent, including at least Claim 1, as provided in 35 U.S.C. § 271(c) by offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '785 Patent and that have no substantial non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '785 Patent. Such sold, offered for sale, and/or imported components include the PropX system and components thereof, including PropX containers.

**RESPONSE:**     Deny.

107.     PropX's own descriptions of its system demonstrate that it is specially made and/or adapted for use in infringing the '785 Patent. For example, PropX's website, www.propx.com (as of February 21, 2017), states that "PropX is a ... containerized solution for Last-Mile proppant delivery for hydraulic fracturing operations."

**RESPONSE:**     PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

108.     PropX's infringement of the '785 Patent is without license or other authorization.

**RESPONSE:**     Deny.

109.     Because PropX had knowledge of the '785 Patent rights and proceeded to directly and indirectly infringe, PropX's infringement is willful.

**RESPONSE:**      Deny.


110.    PropX's continued infringement of the '785 Patent has damaged and will continue to damage SandBox in the amount to be proven at trial.

**RESPONSE:**      Deny.


111.    Unless and until enjoined by this Court, PropX will continue to directly infringe as well as induce and contribute to infringement of the '785 Patent. PropX's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

**RESPONSE:**      Deny.


**FOURTH CAUSE OF ACTION**
**Infringement of the '801 Patent by PropX**

112.    SandBox incorporates herein each of the allegations above.

**RESPONSE:**      PropX incorporates herein each of the responses above.


113.    PropX's products that infringe the '801 Patent include, but are not limited to, trailers for use with the PropX proppant delivery system.

**RESPONSE:**      Deny.


114.    PropX directly infringes — literally and/or under the doctrine of equivalents—at least Claim 7 of the '801 Patent by making, using, selling, offering for sale, and/or importing into the United States trailers for use with the PropX system and components thereof.

**RESPONSE:**      Deny.

115.   Claim 7 of the '801 Patent recites:

7.  A trailer for transporting fracking proppant containers, the trailer comprising:

a connector section for connection to a towing vehicle;

one or more container sections that is integral to the connector section, the one or more container sections having a pair of side rails extending in spaced-apart and substantially parallel relationship relative to one another and connected by a plurality of cross-members to thereby form a skeletal frame structure to provide support to the trailer, the one or more container sections capable of supporting a substantially full proppant container for transport of proppant to a well site;

the pair of side rails spaced so that when a fracking proppant container is loaded onto the one or more container sections, the pair of side rails underlie and support the fracking proppant container;

a plurality of outrigger members attached to the one or more container sections, the outrigger members having a length sufficient to span the distance between the pair of side rails and extend outwardly therefrom in a direction substantially perpendicular to the long axis of the pair of side rails, the outrigger members having connector mechanisms adjacent ends thereof for securing the fracking proppant container to the trailer and one or more cross members of the plurality of cross members is arranged between the plurality of outrigger members, the one or more cross member being positioned to selectively support the trailer when the fracking proppant container is positioned thereon; and

a plurality of wheels attached to the trailer, the wheels adapted to contact the underlying support surface so as to allow the frame to move along the underlying support surface during movement of the wheels.

**RESPONSE:**      Admit.

116.   The PropX system includes a trailer for transporting fracking proppant containers, the trailer comprising: a connector section for connection to a towing vehicle.

**RESPONSE:**      Deny.

117.    The PropX trailer comprises one or more container sections that is integral to the connector section, the one or more container sections having a pair of side rails extending in spaced-apart and substantially parallel relationship relative to one another and connected by a plurality of cross-members to thereby form a skeletal frame structure to provide support to the trailer, the one or more container sections capable of supporting a substantially full proppant container for transport of proppant to a well site.

**RESPONSE:**    Deny.


118.    The PropX trailer comprises the pair of side rails spaced so that when a fracking proppant container is loaded onto the one or more container sections, the pair of side rails underlie and support the fracking proppant container.

**RESPONSE:**    Deny.


119.    The PropX trailer comprises a plurality of outrigger members attached to the one or more container sections, the outrigger members having a length sufficient to span the distance between the pair of side rails and extend outwardly therefrom in a direction substantially perpendicular to the long axis of the pair of side rails, the outrigger members having connector mechanisms adjacent ends thereof for securing the fracking proppant container to the trailer and one or more cross members of the plurality of cross members is arranged between the plurality of outrigger members, the one or more cross member being positioned to selectively support the trailer when the fracking proppant container is positioned thereon; and a plurality of wheels attached to the trailer, the wheels adapted to contact the underlying support surface so as to allow the frame to move along the underlying support surface during movement of the wheels.

**RESPONSE:**    Deny.

120.    PropX has had notice of the '801 Patent at least through its affiliation with Liberty. On May 15, 2014 Liberty entered into the License Agreement with SandBox Logistics. This agreement specifically listed U.S. Patent Application No. 13/854,405, which issued as the '801 Patent, as one of the patents and patent applications for which Liberty was granted a limited, non-exclusive, non-transferable license.

**RESPONSE:**    PropX denies that it has had notice of the '801 Patent at least through its affiliation with Liberty.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

121.    By virtue of its employment of a former executive of Liberty and Liberty's affiliation with PropX, PropX has been on notice of the '801 Patent and its infringement of the '801 Patent at least since this patent issued on September 20, 2016.

**RESPONSE:**    Deny.

122.    Upon information and belief, PropX knowingly induces infringement of the '801 Patent, including at least Claim 7, by customers and end-users of the PropX system—including Liberty — with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the PropX system and components thereof in the United States. As such, PropX has violated 35 U.S.C. § 271(b).

**RESPONSE:**    Deny.

123.    PropX's inducement of infringement includes, for example, promotion of the PropX system on its website, www.propx.com (as of February 21, 2017). This website promotes

the infringing use of the PropX system, for example, by describing it as "[t]he most efficient, economic and environmentally friendly method for delivering proppant."

**RESPONSE:**     PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

124.     As another example of its inducement of infringement, issued a press release, attached hereto as Ex. F, linked to its website, www.propx.com (as of February 21, 2017), stating that "Proppant Express Solutions LLC designs, leases and sells the PropX system, and also provides training and support to onsite operations teams in the use of the system."

**RESPONSE:**     PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

125.     PropX contributes to infringement of the '801 Patent, including at least Claim 7, as provided in 35 U.S.C. § 271(c) by making, offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '801 Patent and that have no substantial non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '801 Patent. Such sold, offered for sale, and/or imported components include the PropX system and components thereof, including PropX trailers.

**RESPONSE:**     Deny.

126.     PropX's own descriptions of its system demonstrate that it is specially made and/or adapted for use in infringing the '801 Patent. For example, PropX's website, www.propx.com (as of February 21, 2017), states that "PropX is a ... containerized solution for Last-Mile proppant delivery for hydraulic fracturing operations."

**RESPONSE:**     PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

127.    PropX's infringement of the '801 Patent is without license or other authorization.

**RESPONSE:**     Deny.

128.    Because PropX had knowledge of the '801 Patent rights and proceeded to directly and indirectly infringe, PropX's infringement is willful.

**RESPONSE:**     Deny.

129.    PropX's continued infringement of the '801 Patent has damaged and will continue to damage SandBox in the amount to be proven at trial.

**RESPONSE:**     Deny.

130.    Unless and until enjoined by this Court, PropX will continue to directly infringe as well as induce and contribute to infringement of the '801 Patent. PropX's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

**RESPONSE:**     Deny.

## FIFTH CAUSE OF ACTION
### Infringement of the '929 Patent by PropX

131.    SandBox incorporates herein each of the allegations above.

**RESPONSE:**     PropX incorporates herein each of the responses above.

132.    PropX's products and/or services that infringe the '929 Patent include, but are not limited to, components of the PropX proppant delivery system.

**RESPONSE:**    Deny.

133.    PropX directly infringes — literally and/or under the doctrine of equivalents — at least Claim 7 of the '929 Patent by making, using, selling, offering for sale, and/or importing into the United States the PropX system and components thereof.

**RESPONSE:**    Deny.

134.    Claim 7 of the '929 Patent recites:

7. A system structurally strengthened to transport and store large volumes of proppant effectively therein, the system comprising:

a first container comprising:

a first top,

a first bottom, having a first outlet formed therein to allow large volumes of proppant to flow therefrom when the outlet is in an open position, the proppant comprising sand, the large volumes comprising at least 30,000 pounds of the sand,

a first plurality of sidewalls coupled to the first top and first bottom, so as to define a first interior volume of the first container thereby to store the proppant therein,

a first plurality of structural supports positioned to provide structural support to the first plurality of sidewalls when large volumes of proppant are positioned within the first interior volume, the proppant having a substantially spherical shape and a tightly graded particle distribution, and

a first plurality of ramps downwardly inclined and extending inwardly from the first plurality of sidewalls to direct the proppant toward the first outlet when the proppant is stored therein;

a second container positioned below the first container, the second container comprising:

a second top, having an opening formed therein,

a second bottom, having a second outlet formed therein to allow large volumes of proppant to flow therefrom when in an open position, the

proppant comprising sand, the large volumes comprising at least 30,000 pounds of the sand,

a second plurality of sidewalls coupled to the second top and second bottom so as to define a second interior volume of the second container thereby to store the proppant therein,

a second plurality of structural supports positioned to provide structural support to the second plurality of sidewalls when large volumes of proppant are positioned within the second interior volume, the proppant having a substantially spherical shape and a tightly graded particle distribution;

a second plurality of ramps downwardly inclined and extending inwardly from the second plurality of sidewalls to direct the proppant toward the second outlet when the proppant is stored therein, the first container and the second container being vertically aligned in a stacked orientation; and

one or more spacers positioned between the first container and the second container, the spacers contacting the second top and first bottom and arranging the first and second containers in a spaced relationship.

**RESPONSE:**     Admit.

135.    The PropX system is structurally strengthened to transport and store large volumes of proppant effectively therein.

**RESPONSE:**     PropX admits, based upon its understanding of the allegation, but denies that is an accurate representation of the scope of the asserted claim.

136.    The PropX system comprises a first container comprising: a top.

**RESPONSE:**     PropX admits, based upon its understanding of the allegation, but denies that is an accurate representation of the scope of the asserted claim.

137.    The first PropX container comprises a bottom, having an outlet formed therein to allow large volumes of proppant to flow therefrom when the outlet is in an open position, the proppant comprising sand, the large volumes comprising at least 30,000 pounds of the sand. For example, the LinkedIn page for PropX LLC (as of February 21, 2017) states "PropX containers hold up to 30,000 Lbs of sand."

**RESPONSE:**      PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

138.    The first PropX container comprises a plurality of sidewalls coupled to the first top and first bottom, so as to define an interior volume of the container thereby to store the proppant therein, a plurality of structural supports positioned to provide structural support to the plurality of sidewalls when large volumes of proppant are positioned within the interior volume, the proppant having a substantially spherical shape and a tightly graded particle distribution, and a plurality of ramps downwardly inclined and extending inwardly from the plurality of sidewalls to direct the proppant toward the outlet when the proppant is stored therein.

**RESPONSE:**      Deny.

139.    The PropX system comprises a second container positioned below the first container.

**RESPONSE:**      Deny.

140.    The second PropX container comprises a top, having an opening formed therein.

**RESPONSE:**      PropX admits, based upon its understanding of the allegation, but denies that is an accurate representation of the scope of the asserted claim.

141.    The second PropX container comprises a bottom, having an outlet formed therein to allow large volumes of proppant to flow therefrom when the outlet is in an open position, the proppant comprising sand, the large volumes comprising at least 30,000 pounds of the sand. For example, the LinkedIn page for PropX LLC (as of February 21, 2017) states "PropX containers hold up to 30,000 Lbs of sand."

**RESPONSE:**    PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

142.    The second PropX container comprises a plurality of sidewalls coupled to the first top and first bottom, so as to define an interior volume of the container thereby to store the proppant therein, a plurality of structural supports positioned to provide structural support to the plurality of sidewalls when large volumes of proppant are positioned within the interior volume, the proppant having a substantially spherical shape and a tightly graded particle distribution, and a plurality of ramps downwardly inclined and extending inwardly from the plurality of sidewalls to direct the proppant toward the outlet when the proppant is stored therein.

**RESPONSE:**    Deny.

143.    The PropX system comprises the first container and the second container being vertically aligned in a stacked orientation; and one or more spacers positioned between the first container and the second container, the spacers contacting the second top and first bottom and arranging the first and second containers in a spaced relationship.

**RESPONSE:**    Deny.

144.    PropX has been on notice of the application that issued as the '929 Patent at least since November 8, 2016. On April 10, 2014, an Information Disclosure Statement was filed in the '420 Application, which listed two of the four parent applications to the application that issued as the '929 Patent. Pursuant to a Statement Under 37 C.F.R § 3.73(c) filed with the PTO on November 8, 2016, the entire right, title, and interest in the '420 Application was assigned to PropX Solutions.

**RESPONSE:**    Admit.

145.    PropX received further notice of the application that issued as the '929 Patent on August 5, 2016 when Plaintiffs filed the first Amended Complaint in the Grit lawsuit asserting claims for infringement of the '518 and '626 Patents, which are parents of the '929 Patent, against Grit. PropX Solutions has purchased assets of Grit, assumed some liability for the patent infringement claims asserted against Grit in the Grit lawsuit, and assumed control of the Grit lawsuit on Grit's behalf.

**RESPONSE:**      Deny.

146.    PropX has received further notice of the '929 Patent through its employment of Mark D'Agostino and Scott D'Agostino, who were owners of Grit at the time PropX acquired Grit's assets, assumed liability for the patent infringement claims asserted against Grit in the Grit lawsuit, and assumed control of the Grit lawsuit on Grit's behalf.

**RESPONSE:**      Deny.

147.    PropX has also had notice of the '929 Patent through its affiliation with Liberty. On May 15, 2014 Liberty entered into the License Agreement with SandBox Logistics. This agreement specifically listed U.S. Patent Application No. 13/949,693, which issued as the '518 Patent, as one of the patents and patent applications for which Liberty was granted a limited, non-exclusive, non-transferable license. The '929 Patent is a continuation of the '626 Patent, which is a continuation of the '518 Patent.

**RESPONSE:**      PropX denies that it has also had notice of the '929 Patent

through its affiliation with Liberty.  PropX lacks sufficient information to admit

or deny the remaining allegations set forth in this paragraph and therefore denies

them.

148.    By virtue of its control of Grit's defense of the Grit lawsuit, its acquisition of assets from Grit, its employment of co-owners of Grit, its employment of a former executive of Liberty, and Liberty's affiliation with PropX, PropX has been on notice of the '929 Patent and its infringement of the '929 Patent at least since the '929 Patent issued on December 6, 2016.

**RESPONSE:**    Deny.

149.    Upon information and belief, PropX knowingly induces infringement of the '929 Patent, including at least Claim 7, by customers and end-users of the PropX system—including Liberty — with specific intent to induce infringement, and/or with willful blindness to the possibility that its acts induce infringement, through activities relating to selling, marketing, advertising, promotion, support, and distribution of the PropX system and components thereof in the United States. As such, PropX has violated 35 U.S.C. § 271(b).

**RESPONSE:**    Deny.

150.    PropX's inducement of infringement includes, for example, promotion of the PropX system on its website, www.propx.com (as of February 21, 2017). This website promotes the infringing use of the PropX system, for example, by describing it as "[t]he most efficient, economic and environmentally friendly method for delivering proppant."

**RESPONSE:**    PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

151.    As another example of its inducement of infringement, PropX issued a press release, attached hereto as Ex. F, linked to its website, www.propx.com (as of February 21, 2017), stating that "Proppant Express Solutions LLC designs, leases and sells the PropX system, and also provides training and support to onsite operations teams in the use of the system."

**RESPONSE:**   PropX admits the accuracy of the quoted material from the website, but denies the remaining allegations.

152.   PropX contributes to infringement of the '929 Patent, including at least Claim 7, as provided in 35 U.S.C. § 271(c) by offering to sell, selling, or importing into the United States one or more components that are a material part of the claimed inventions of the '929 Patent and that have no substantial non-infringing use with knowledge that such components are especially made or adapted for use in infringing the '929 Patent.  Such sold, offered for sale, and/or imported components include the PropX system and components thereof, including PropX containers.

**RESPONSE:**   Deny.

153.   PropX's own descriptions of its system demonstrate that it is specially made and/or adapted for use in infringing the '929 Patent. For example, PropX's website, www.propx.com (as of February 21, 2017), states that "PropX is a ... containerized solution for Last-Mile proppant delivery for hydraulic fracturing operations."

**RESPONSE:**   Deny.

154.   PropX's infringement of the '929 Patent is without license or other authorization.

**RESPONSE:**   Deny.

155.   Because PropX had knowledge of the '929 Patent rights and proceeded to directly and indirectly infringe, PropX's infringement is willful.

**RESPONSE:**   Deny.

156.     PropX's continued infringement of the '929 Patent has damaged and will continue to damage SandBox in the amount to be proven at trial.

**RESPONSE:**     Deny.


157.     Unless and until enjoined by this Court, PropX will continue to directly infringe as well as induce and contribute to infringement of the '929 Patent. PropX's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

**RESPONSE:**     Deny.


### SIXTH CAUSE OF ACTION
### Infringement of the '518 Patent by Liberty

158.     SandBox incorporates herein each of the allegations above.

**RESPONSE:**     PropX incorporates herein each of the responses above.


159.     Liberty directly infringes the '518 Patent at least by using the PropX products and/or methods in the United States that are covered by one or more claims of the '518 Patent and induces infringement of the '518 Patent by actively inducing others to make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '518 Patent.

**RESPONSE:**     PropX denies that PropX products and/or methods are covered by one or more claims of the '518 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

160.    Liberty directly infringes — literally and/or under the doctrine of equivalents—at least Claims 1 and 13 of the '518 Patent by making, using, selling, offering for sale, and/or importing into the United States the PropX system and components thereof.

**RESPONSE:**    PropX denies that the PropX system and components thereof are covered by one or more claims of the '518 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

161.    Claim 1 of the '518 Patent recites:

1.  A proppant storage system for use with hydraulic fracturing operations, the system comprising:

a container comprising;

a cavity;

sidewalls that define a lateral periphery of the cavity;

a plurality of support braces affixed to the sidewalls and which define structural support for the sidewalls;

inclined surfaces that define a lower periphery of the cavity, and that depend axially away and extends inwardly from the sidewalls with lateral distance from the sidewalls to define an inclined lower periphery surface;

a bottom;

support members that extend between the bottom and inclined surfaces;

a hatch positioned closely adjacent to the bottom and selectively moveable to an open configuration so that when proppant is positioned in the cavity and comprises particles that have a substantially spherical shape and a tightly graded particle distribution, the proppant readily slides down the inclined surface to the open configuration of the hatch and from within the cavity to a location outside of the cavity and moveable to a closed configuration of the hatch with the hatch

aligned with lower ends of the inclined surfaces thereby to block a flow of the proppant from within the cavity, the hatch circumscribed by the sidewalls when the hatch is in the open configuration; and

an opening to the cavity that registers with the hatch.

**RESPONSE:**     Admit.

162.   Claim 13 of the '518 Patent recites:

13.  The proppant storage system of claim 1, wherein the sidewalls have a rigidity suitable for retaining no less than about 30,000 pounds of proppant when positioned therein.

**RESPONSE:**     Admit.

163.   Upon information and belief, Liberty has used and continues to use PropX containers and systems that are identical in all relevant aspects to the PropX containers and systems addressed above in Paragraphs 45-48 of Plaintiff's First Cause of Action. For example, below is a photograph of a PropX container painted with Liberty's logo that upon information and belief is in use by Liberty. This container is structurally identical to the PropX containers addressed above in Plaintiff's First Cause of Action, a photograph of which is also shown below for comparison, and Plaintiffs incorporate Paragraphs 45-48 into this Cause of Action as though fully set forth herein.

**RESPONSE:**     PropX admits that Liberty has used and continues to use PropX containers and systems.   PropX admits that this paragraph has a photograph depicting a PropX container painted with Liberty's logo. PropX incorporates by reference its responses to Paragraphs 45-48.   PropX denies the remaining allegations.

164.    Liberty has been on notice of the application that issued as the '518 Patent at least since May 15, 2014. On that date, Liberty entered into the License Agreement with SandBox Logistics. This agreement specifically listed U.S. Patent Application No. 13/949,693, which issued as the '518 Patent, as one of the patents and patent applications for which Liberty was granted a limited, non-exclusive, non-transferable license.

**RESPONSE:**     PropX lacks sufficient information to admit or deny the allegations set forth in this paragraph and therefore denies the allegations set forth therein.

165.    Liberty has been on notice of the '518 Patent by its affiliation with PropX. PropX's knowledge is set forth above in Plaintiff's First Cause of Action, and Plaintiffs incorporate Paragraphs 49-53 into this Cause of Action as though fully set forth herein.

**RESPONSE:**     PropX denies that it has been on notice of the '518 Patent. PropX incorporates by reference its responses to paragraphs 49-53.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

166.    By virtue of PropX's control of Grit's defense of the Grit lawsuit, its acquisition of assets from Grit, and its employment of co-owners of Grit, PropX has been on notice of the '518 Patent and its infringement of the '518 Patent at least since April 2016.

**RESPONSE:**     Deny.

167.    By virtue of the License Agreement and its affiliation with PropX, Liberty has been on notice of the '518 Patent and its infringement of the '518 Patent at least since April 2016.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

168.      Upon information and belief, Liberty knowingly induces infringement of the '518 Patent, including at least Claims 1 and 13, by PropX and customers and end-users of the PropX system with specific intent to induce infringement and/or with willful blindness to the possibility that its acts induce infringement, through activities including directing, assisting, overseeing, encouraging and participating in the making, using, offering for sale, sale, and/or importation into the United States of the PropX system as well as directing, assisting, overseeing, encouraging and participating in the marketing, advertising, promotion, support, and distribution of the PropX system and components thereof in the United States. As such, Liberty has violated 35 U.S.C. § 271(b).

**RESPONSE:**      PropX denies that the PropX system and components thereof are covered by the claims of the '518 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

169.      Liberty's infringement of the '518 Patent is without license or other authorization.

**RESPONSE:**      PropX lacks sufficient information to admit or deny the allegations set forth in this paragraph and therefore denies the allegations set forth therein.

170.      Because Liberty had knowledge of the '518 Patent rights and proceeded to directly and indirectly infringe, Liberty's infringement is willful.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

171.   Liberty's continued infringement of the '518 Patent has damaged and will continue to damage SandBox in the amount to be proven at trial.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

172.   Unless and until enjoined by this Court, Liberty will continue to directly infringe as well as induce and contribute to infringement of the '518 Patent. Liberty's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

### SEVENTH CAUSE OF ACTION
**Infringement of the '626 Patent by Liberty**

173.   SandBox incorporates herein each of the allegations above.

**RESPONSE:**      PropX incorporates herein each of the responses above.

174.   Liberty directly infringes the '626 Patent at least by using the PropX products and/or methods in the United States that are covered by one or more claims of the '626 Patent and induces infringement of the '626 Patent by actively inducing others to make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '626 Patent.

**RESPONSE:**      PropX denies that PropX products and/or methods are covered by one or more claims of the '626 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

175.    Liberty directly infringes — literally and/or under the doctrine of equivalents—at least Claim 1 of the '626 Patent by making, using, selling, offering for sale, and/or importing into the United States the PropX system and components thereof.

**RESPONSE:**      PropX denies that the PropX system and components thereof are covered by the claims of the '626 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

176.    Claim 1 of the '626 Patent recites:

1.  A container structurally strengthened to transport and store large volumes of proppant effectively therein, the container comprising:

a top;

a bottom, having an outlet formed therein;

sidewalls coupled to the top and bottom, so as to define an interior volume of the container thereby to store the proppant therein;

a plurality of sidewall supports positioned to provide structural support to the sidewalls when large volumes of proppant are positioned within the interior volume, the proppant comprising sand having a substantially spherical shape and a tightly graded particle distribution, the plurality of sidewall supports including a plurality of support braces extending in a substantially horizontal position and positioned in direct contact with interior surfaces of the sidewalls to enhance support of the sidewalls when the container is filled with the proppant, the container including a container frame structurally arranged to support another container when filled with large volumes of proppant and when positioned

in a vertically stacked arrangement thereabove, and the large volumes are at least 30,000 pounds;

ramps downwardly inclined and extending inwardly from the sidewalls to direct the proppant toward the outlet when the proppant is stored therein, at least one support brace of the plurality of support braces being positioned vertically higher than the ramps; and

a hatch positioned proximate the outlet, the hatch being moveable between open and closed positions.

**RESPONSE:**     Admit.

177.    Upon information and belief, Liberty has used and continues to use PropX containers and systems that are identical in all relevant aspects to the PropX containers and systems addressed above in Paragraphs 67-73 of Plaintiff's Second Cause of Action. For example, below is a photograph of a PropX container painted with Liberty's logo that upon information and belief is in use by Liberty. This container is structurally identical to the PropX containers addressed above in Plaintiff's Second Cause of Action, a photograph of which is also shown below for comparison, and Plaintiffs incorporate Paragraphs 67-73 into this Cause of Action as though fully set forth herein.

**RESPONSE:**     PropX admits that Liberty has used and continues to use PropX containers and systems.  PropX admits that this paragraph has a photograph depicting a PropX container painted with Liberty's logo. PropX incorporates by reference its responses to Paragraphs 67-73.  PropX denies the remaining allegations.

178.    Liberty has been on notice of the application that issued as the '626 Patent at least since May 15, 2014. On that date, Liberty entered into the License Agreement with SandBox Logistics. This agreement specifically listed U.S. Patent Application No. 13/949,693, which

issued as the '518 Patent, as one of the patents and patent applications for which Liberty was granted a limited, non-exclusive, non-transferable license. The '626 Patent is a continuation of the '518 Patent.

> **RESPONSE:**    PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

179.    Liberty has been on notice of the '626 Patent by its affiliation with PropX. PropX's knowledge is set forth above in Plaintiff's Second Cause of Action, and Plaintiffs incorporate Paragraphs 74-78 into this Cause of Action as though fully set forth herein.

> **RESPONSE:**    PropX incorporates by reference its responses to paragraphs 74-78.  PropX denies that it has been on notice of the '626 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

180.    By virtue of PropX's control of Grit's defense of the Grit lawsuit, its acquisition of assets from Grit, and its employment of co-owners of Grit, PropX has been on notice of the '626 Patent and its infringement of the '626 Patent at least since April 2016.

> **RESPONSE:**    Deny.

181.    By virtue of the License Agreement and its affiliation with PropX, Liberty has been on notice of the '626 Patent and its infringement of the '518 Patent at least since April, 2016.

> **RESPONSE:**    PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

182.    Upon information and belief, Liberty knowingly induces infringement of the '626 Patent, including at least Claim 1, by PropX and customers and end-users of the PropX system with specific intent to induce infringement and/or with willful blindness to the possibility that its acts induce infringement, through activities including directing, assisting, overseeing, encouraging and participating in the making, using, offering for sale, sale, and/or importation into the United States of the PropX system as well as directing, assisting, overseeing, encouraging and participating in the marketing, advertising, promotion, support, and distribution of the PropX system and components thereof in the United States. As such, Liberty has violated 35 U.S.C. § 271(b).

**RESPONSE:**    PropX denies that the PropX system and components thereof are covered by claims of the '626 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

183.    Liberty's infringement of the '626 Patent is without license or other authorization.

**RESPONSE:**    PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

184.    Because Liberty had knowledge of the '626 Patent rights and proceeded to directly and indirectly infringe, Liberty's infringement is willful.

**RESPONSE:**    PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

185.    Liberty's continued infringement of the '626 Patent has damaged and will continue to damage SandBox in the amount to be proven at trial.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

186.    Unless and until enjoined by this Court, Liberty will continue to directly infringe as well as induce and contribute to infringement of the '626 Patent. Liberty's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

## EIGHTH CAUSE OF ACTION
### Infringement of the '785 Patent by Liberty

187.    SandBox incorporates herein each of the allegations above.

**RESPONSE:**      PropX incorporates herein each of the responses above.

188.    Liberty induces infringement of the '785 Patent by actively inducing others to make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '785 Patent.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

189.    Claim 1 of the '785 Patent recites:

1.  A method of unloading fracking proppant at a well site for use when hydraulic fracking is to be performed, the method comprising:

a) removing a plurality of proppant containers that contain fracking proppant from a trailer of one or more transport road vehicles when

positioned adjacent a well site at a location where hydraulic fracking is to be performed, each of the plurality of proppant containers having an outlet positioned at a bottom thereof with a funnel-shaped portion directing the fracking proppant toward the outlet, each of the plurality of proppant containers having a closed and substantially rectangular upper proppant containing portion, the funnel-shaped portion underlying the upper proppant containing portion and having proppant also positioned therein, a pair of vertically-extending end walls and a pair of vertically-extending side walls defining the closed and substantially rectangular upper proppant containing portion, a frame including a plurality of structural support members positioned to span the end walls and the sidewalls between end frame members to enhance support of the end walls and the side walls when the proppant container is full of fracking proppant, and each of the plurality of containers has an open area positioned about the funnel-shaped portion and below the upper proppant containing portion adjacent a bottom of the respective each of the plurality of proppant containers to allow for visual access of a respective exterior surface of the funnel-shaped portion when the container is full of fracking proppant, the open area being visible through one or more spatial gaps extending through the frame in a location positioned below at least each of the side walls of and above the bottom of the proppant container;

b) transferring, after removal from the trailer of the one or more transport road vehicles, each of the plurality of proppant containers to a support structure positioned at the well site so that each of the plurality of proppant containers is positioned to overlay a common conveyor positioned at a separate location on the well site from the trailer, the support structure including a plurality of cradles that correspond to the plurality of proppant containers transferred thereto, the common conveyor being positioned to underlie and to be spaced- apart from each of the plurality of cradles;

c) discharging by gravity feed the fracking proppant contained within each of the plurality of proppant containers when positioned on the support structure and within the plurality of cradles from the outlet positioned at a bottom of each of the plurality of proppant containers so that the fracking proppant passes onto the common conveyor; and

d) conveying the fracking proppant away from the plurality of proppant containers, after the discharging of the fracking proppant onto the common conveyor, toward a desired location at the well site where hydraulic fracking is to be performed so that the fracking proppant is introduced to fracking fluid for passage into a wellbore at the well site.

**RESPONSE:**   Admit.

190.    Liberty has been on notice of the application that issued as the '785 Patent at least since May 15, 2014. On that date, Liberty entered into the License Agreement with SandBox Logistics. This agreement specifically listed U.S. Patent Application Nos. 13/628,702 and 13/555,635, the parent applications of the '785 Patent, as one of the patents and patent applications for which Liberty was granted a limited, non-exclusive, non- transferable license.

**RESPONSE:**    PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

191.    Liberty has been on notice of the '785 Patent by its affiliation with PropX. PropX's knowledge is set forth above in Plaintiff's Third Cause of Action, and Plaintiffs incorporate Paragraphs 98-102 into this Cause of Action as though fully set forth herein.

**RESPONSE:**    PropX denies that it has been on notice of the '785 Patent. PropX incorporates by reference its responses to paragraphs 98-102.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

192.    By virtue of its acquisition of Grit's '420 Application and its employment of co-owners of Grit, PropX has been on notice of the '785 Patent and its infringement of the '785 Patent at least since the '785 Patent issued on September 13, 2016.

**RESPONSE:**    Deny.

193.    By virtue of the License Agreement and its affiliation with PropX, Liberty has been on notice of the '785 Patent and its infringement of the '785 Patent at least since the '785 Patent issued on September 13, 2016.

**RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

194.     As set forth above in Paragraphs 88-111 of Plaintiffs' Third Cause of Action, which are incorporated as though fully set forth herein, PropX and customers and end-users of the PropX system directly infringe the '785 Patent.

**RESPONSE:**     PropX incorporates by reference its responses to paragraphs 88-111.  PropX denies the remaining allegations.

195.     Upon information and belief, Liberty knowingly induces infringement of the '785 Patent, including at least Claim 1, by PropX and customers and end-users of the PropX system with specific intent to induce infringement and/or with willful blindness to the possibility that its acts induce infringement, through activities including directing, assisting, overseeing, encouraging and participating in the making, using, offering for sale, sale, and/or importation into the United States of the PropX system as well as directing, assisting, overseeing, encouraging and participating in the marketing, advertising, promotion, support, and distribution of the PropX system and components thereof in the United States. As such, Liberty has violated 35 U.S.C. § 271(b).

**RESPONSE:**     PropX denies that the PropX system and components thereof are covered by the claims of the '785 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

196.     Liberty's infringement of the '785 Patent is without license or other authorization.

**RESPONSE:**    PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

197.    Because Liberty had knowledge of the '785 Patent rights and proceeded to infringe, Liberty's infringement is willful.

**RESPONSE:**    PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

198.    Liberty's continued infringement of the '785 Patent has damaged and will continue to damage SandBox in the amount to be proven at trial.

**RESPONSE:**    PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

199.    Unless and until enjoined by this Court, Liberty will continue to induce infringement of the '785 Patent. Liberty's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

**RESPONSE:**    PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

## NINTH CAUSE OF ACTION
### Infringement of the '801 Patent by Liberty

200.    SandBox incorporates herein each of the allegations above.

**RESPONSE:**    PropX incorporates herein each of the responses above.

201.    Liberty induces infringement of the '801 Patent by actively inducing others to make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '801 Patent.

**RESPONSE:**    PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

202.    Claim 7 of the '801 Patent recites:

A trailer for transporting fracking proppant containers, the trailer comprising:

a connector section for connection to a towing vehicle;

one or more container sections that is integral to the connector section, the one or more container sections having a pair of side rails extending in spaced-apart and substantially parallel relationship relative to one another and connected by a plurality of cross-members to thereby form a skeletal frame structure to provide support to the trailer, the one or more container sections capable of supporting a substantially full proppant container for transport of proppant to a well site;

the pair of side rails spaced so that when a fracking proppant container is loaded onto the one or more container sections, the pair of side rails underlie and support the fracking proppant container;

a plurality of outrigger members attached to the one or more container sections, the outrigger members having a length sufficient to span the distance between the pair of side rails and extend outwardly therefrom in a direction substantially perpendicular to the long axis of the pair of side rails, the outrigger members having connector mechanisms adjacent ends thereof for securing the fracking proppant container to the trailer and one or more cross members of the plurality of cross members is arranged between the plurality of outrigger members, the one or more cross member being positioned to selectively support the trailer when the fracking proppant container is positioned thereon; and

a plurality of wheels attached to the trailer, the wheels adapted to contact the underlying support surface so as to allow the frame to

move along the underlying support surface during movement of the wheels.

**RESPONSE:**     Admit.

203.    Liberty has been on notice of the application that issued as the '801 Patent at least since May 15, 2014. On that date, Liberty entered into the License Agreement with SandBox Logistics. This agreement specifically listed U.S. Patent Application No. 13/854,405, which issued as the '801 Patent, as one of the patents and patent applications for which Liberty was granted a limited, non-exclusive, non-transferable license.

**RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

204.    By virtue of the License Agreement, Liberty has been on notice of the '801 Patent at least since the '801 Patent issued on September 20, 2016.

**RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

205.    As set forth above in Paragraphs 112-130 of Plaintiffs' Fourth Cause of Action, which are incorporated as though fully set forth herein, PropX and customers and end-users of the PropX system directly infringe the '801 Patent.

**RESPONSE:**     PropX incorporates by reference its responses to paragraphs 112-130.  PropX denies that PropX and customers and end-users of the PropX system directly infringe the '801 Patent.  PropX denies the remaining allegations.

206.    Upon information and belief, Liberty knowingly induces infringement of the '801 Patent, including at least Claim 7, by PropX and customers and end-users of the PropX system

with specific intent to induce infringement and/or with willful blindness to the possibility that its acts induce infringement, through activities including directing, assisting, overseeing, encouraging and participating in the making, using, offering for sale, sale, and/or importation into the United States of the PropX system as well as directing, assisting, overseeing, encouraging and participating in the marketing, advertising, promotion, support, and distribution of the PropX system and components thereof in the United States. As such, Liberty has violated 35 U.S.C. § 271(b).

> **RESPONSE:**     PropX denies that the PropX system and components thereof are covered by the claims of the '801 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

207.    Liberty's infringement of the '801 Patent is without license or other authorization.

> **RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

208.    Because Liberty had knowledge of the '801 Patent rights and proceeded to infringe, Liberty's infringement is willful.

> **RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

209.    Liberty's continued infringement of the '801 Patent has damaged and will continue to damage SandBox in the amount to be proven at trial.

> **RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

210.    Unless and until enjoined by this Court, Liberty will continue to induce infringement of the '801 Patent. Liberty's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

**RESPONSE:**    PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

## TENTH CAUSE OF ACTION
### Infringement of the '929 Patent by Liberty

211.    SandBox incorporates herein each of the allegations above.

**RESPONSE:**    PropX incorporates herein each of the responses above.

212.    Liberty directly infringes the '929 Patent at least by using the PropX products and/or methods in the United States that are covered by one or more claims of the '929 Patent and induces infringement of the '929 Patent by actively inducing others to make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by one or more claims of the '929 Patent.

**RESPONSE:**    PropX denies that PropX products and/or methods in the United States that are covered by one or more claims of the '929 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

213.    Liberty directly infringes — literally and/or under the doctrine of equivalents—at least Claim 7 of the '929 Patent by making, using, selling, offering for sale, and/or importing into the United States the PropX system and components thereof.

**RESPONSE:**      PropX denies that the PropX system and components thereof are covered by the claims of the '929 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

214.   Claim 7 of the '929 Patent recites:

7.  A system structurally strengthened to transport and store large volumes of proppant effectively therein, the system comprising:

a first container comprising:

a first top,

a first bottom, having a first outlet formed therein to allow large volumes of proppant to flow therefrom when the outlet is in an open position, the proppant comprising sand, the large volumes comprising at least 30,000 pounds of the sand,

a first plurality of sidewalls coupled to the first top and first bottom, so as to define a first interior volume of the first container thereby to store the proppant therein,

a first plurality of structural supports positioned to provide structural support to the first plurality of sidewalls when large volumes of proppant are positioned within the first interior volume, the proppant having a substantially spherical shape and a tightly graded particle distribution, and

a first plurality of ramps downwardly inclined and extending inwardly from the first plurality of sidewalls to direct the proppant toward the first outlet when the proppant is stored therein;

a second container positioned below the first container, the second container comprising:

a second top, having an opening formed therein,

a second bottom, having a second outlet formed therein to allow large volumes of proppant to flow therefrom when in an

open position, the proppant comprising sand, the large volumes comprising at least 30,000 pounds of the sand,

a second plurality of sidewalls coupled to the second top and second bottom so as to define a second interior volume of the second container thereby to store the proppant therein,

a second plurality of structural supports positioned to provide structural support to the second plurality of sidewalls when large volumes of proppant are positioned within the second interior volume, the proppant having a substantially spherical shape and a tightly graded particle distribution;

a second plurality of ramps downwardly inclined and extending inwardly from the second plurality of sidewalls to direct the proppant toward the second outlet when the proppant is stored therein, the first container and the second container being vertically aligned in a stacked orientation; and

one or more spacers positioned between the first container and the second container, the spacers contacting the second top and first bottom and arranging the first and second containers in a spaced relationship.

**RESPONSE:**    Admit.


215.    Upon information and belief, Liberty has used and continues to use PropX containers and systems that are identical in all relevant aspects to the PropX containers and systems addressed above in Paragraphs 135-143 of Plaintiff's Fifth Cause of Action. For example, below is a photograph of a PropX container painted with Liberty's logo that upon information and belief is in use by Liberty. This container is structurally identical to the PropX containers addressed above in Plaintiff's Fifth Cause of Action, a photograph of which is also shown below for comparison, and Plaintiffs incorporate Paragraphs 135-143 into this Cause of Action as though fully set forth herein.

**RESPONSE:**      PropX admits that Liberty has used and continues to use PropX

containers and systems.   PropX admits that this paragraph has a photograph

depicting a PropX container painted with Liberty's logo. PropX incorporates by

reference its responses to Paragraphs 135-143.   PropX denies the remaining

allegations.

216.    Liberty has been on notice of the application that issued as the '929 Patent at least

since May 15, 2014. On that date, Liberty entered into the License Agreement with SandBox

Logistics. This agreement specifically listed U.S. Patent Application No. 13/949,693, which

issued as the '518 Patent, as one of the patents and patent applications for which Liberty was

granted a limited, non-exclusive, non-transferable license. The '929 Patent is a continuation of

the '626 Patent, which is a continuation of the '518 Patent.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a

belief about the truth of the allegations.

217.    Liberty has been on notice of the '929 Patent by its affiliation with PropX.

PropX's knowledge is set forth above in Plaintiff's Fifth Cause of Action, and Plaintiffs

incorporate Paragraphs 144-148 into this Cause of Action as though fully set forth herein.

**RESPONSE:**      PropX denies that it has been on notice of the '929 Patent.

PropX incorporates by reference its responses to paragraphs 144-148.   PropX

lacks sufficient information to admit or deny the remaining allegations set forth in

this paragraph and therefore denies them.

218.    By virtue of PropX's control of Grit's defense of the Grit lawsuit, its acquisition

of assets from Grit, and its employment of co-owners of Grit, PropX has been on notice of the

'929 Patent and its infringement of the '929 Patent at least since the '929 Patent issued on December 6, 2016.

**RESPONSE:**     Deny.

219.     By virtue of the License Agreement and its affiliation with PropX, Liberty has been on notice of the '929 Patent and its infringement of the '929 Patent at least since the '929 Patent issued on December 6, 2016.

**RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

220.     Upon information and belief, Liberty knowingly induces infringement of the '929 Patent, including at least Claim 7, by PropX and customers and end-users of the PropX system with specific intent to induce infringement and/or with willful blindness to the possibility that its acts induce infringement, through activities including directing, assisting, overseeing, encouraging and participating in the making, using, offering for sale, sale, and/or importation into the United States of the PropX system as well as directing, assisting, overseeing, encouraging and participating in the marketing, advertising, promotion, support, and distribution of the PropX system and components thereof in the United States. As such, Liberty has violated 35 U.S.C. § 271(b).

**RESPONSE:**     PropX denies that the PropX system and components thereof are covered by the claims of the '929 Patent.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

221.     Liberty's infringement of the '929 Patent is without license or other authorization.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

222.    Because Liberty had knowledge of the '929 Patent rights and proceeded to directly and indirectly infringe, Liberty's infringement is willful.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

223.    Liberty's continued infringement of the '929 Patent has damaged and will continue to damage SandBox in the amount to be proven at trial.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

224.    Unless and until enjoined by this Court, Liberty will continue to directly infringe as well as induce and contribute to infringement of the '929 Patent. Liberty's infringing acts are causing and will continue to cause Plaintiffs irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.

**RESPONSE:**      PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

**ELEVENTH CAUSE OF ACTION**
**Breach of Contract against Defendants Liberty and PropX**

225.    Plaintiffs reallege the material facts alleged in the preceding paragraphs.

**RESPONSE:**      PropX incorporates herein its responses to those material facts.

226.    The License Agreement is a valid, enforceable contract between Liberty and SandBox.

**RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

227.    SandBox has performed its obligations under the contract.

**RESPONSE:**     PropX lacks sufficient knowledge or information to form a belief about the truth of the allegations.

228.    Both Liberty and PropX are bound by the forum selection clause in the Agreement. Liberty is directly bound as a party to the Agreement. PropX is likewise bound by virtue of it being an affiliate, agent, and/or alter ego of Liberty that is acting in concert with Liberty.

**RESPONSE:**     PropX denies that it is bound by the forum selection clause in the Agreement.  PropX denies that it is bound by virtue of it being an affiliate, agent, and/or alter ego of Liberty that is acting in concert with Liberty.  PropX lacks sufficient information to admit or deny the remaining allegations set forth in this paragraph and therefore denies them.

229.    Liberty and PropX have breached the License Agreement by directing, controlling, and funding Grit's IPR challenging the '341 Patent. Liberty and PropX are acting in concert with Grit to violate the forum selection clause.

**RESPONSE:**     Deny.

230.    Defendants' breach of the forum selection clause will cause SandBox substantial and irreparable injury.

**RESPONSE:**      Deny.

231.    Plaintiffs request both a preliminary and permanent injunction that prohibit Defendants from filing, prosecuting, funding, or participating in an IPR challenging any SandBox patents.

> **RESPONSE:**      PropX admits that in this paragraph Plaintiffs request both a
>
> preliminary and permanent injunction that prohibit Defendants from filing,
>
> prosecuting, funding, or participating in an IPR challenging any SandBox patents.
>
> PropX denies that Plaintiffs are entitled to any such injunction.

**PROPX'S AFFIRMATIVE DEFENSES**
**FIRST DEFENSE – NON-INFRINGEMENT**

232.    PropX has not infringed, contributed to the infringement, or induced the infringement of any valid and enforceable claims of the '518, '626, '785, '801, and '929 Patents (collectively, the "Asserted Patents"), as properly construed, literally, under the doctrine of equivalents, or in any other manner and has not otherwise committed any acts in violation of 35 U.S.C. § 271.

**SECOND DEFENSE – INVALIDITY**

233.    Upon information and belief, some or all of the claims of the Asserted Patents are invalid for failure to satisfy the conditions of patentability set forth in one or more of the provisions of 35 U.S.C. §§ 101, 102, 103 and/or 112, as well as other applicable rules and regulations.

## THIRD DEFENSE – STATUTORY LIMITATIONS ON DAMAGES

234.    SandBox's claims for damages, if any, against Grit for alleged infringement of the Asserted Patents are barred in whole or in part by 35 U.S.C. §§ 287 and/or 288.

## FOURTH DEFENSE – INDEFINITE

235.    The venue selection clause of the contract asserted by SandBox is indefinite as applied to IPRs.

## FIFTH DEFENSE – CONTRARY TO PUBLIC POLICY

236.    Enforcement of the SandBox contract to prevent filing of an IPR is contrary to public policy.

## SIXTH DEFENSE – LACK OF PRIVITY

237.    PropX did not enter into the contract asserted by SandBox.


## PROPX'S COUNTERCLAIMS

Proppant Express Investments, LLC and Proppant Express Solutions, LLC (collectively "PropX") alleges for its declaratory judgment counterclaims of patent non-infringement and invalidity as follows:

1.    This counterclaim arises under 28 U.S.C. §§ 2201 and 2202, and this Court has jurisdiction under the laws of the United States concerning actions relating to patents, 28 U.S.C. § 1338(a).  Jurisdiction is also conferred upon this Court in that this counterclaim arises out of the same transaction(s) that is the subject matter of the Complaint.

2.    There is an actual justiciable controversy between PropX and SandBox concerning the alleged infringement, validity, scope and enforceability of United States Patent Nos. 9,296,518 (the "'518 patent); 9,403,626 (the "'626 patent"); 9,440,785 (the "'785 patent");

9,446,801 (the "'801 patent"); and 9,511,929 (the "'929 patent") (collectively the "Patents-in-Suit").

3.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400.

4.     Plaintiffs Sandbox Logistics, LLC and Oren Technologies, LLC (collectively "SandBox") claim to be the present owner and exclusive licensee of all right, title and interest in and to the Patents-in-Suit including the right to sue and recover damages for infringement.

5.     Plaintiffs have asserted that activities of PropX in the United States infringe the claims of the Patents-in-Suit.

### FIRST COUNTERCLAIM
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '518 PATENT

6.     To the extent not inconsistent, PropX incorporates by reference the allegations of its Answer and Defenses as if fully set forth herein.

7.     PropX is not infringing and has not infringed any properly construed, valid claim of the '518 Patent.

8.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, PropX requests a declaration by the Court that it does not infringe any claim of the '518 Patent.

### SECOND COUNTERCLAIM
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '626 PATENT

9.     To the extent not inconsistent, PropX incorporates by reference the allegations of its Answer and Defenses as if fully set forth herein.

10.     PropX is not infringing and has not infringed any properly construed, valid claim of the '626 Patent.

11.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., PropX requests a declaration by the Court that it does not infringe any claim of the '626 Patent.

## THIRD COUNTERCLAIM
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '785 PATENT

12.     To the extent not inconsistent, PropX incorporates by reference the allegations of its Answer and Defenses as if fully set forth herein.

13.     PropX is not infringing and has not infringed any properly construed, valid claim of the '785 Patent.

14.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., PropX requests a declaration by the Court that it does not infringe any claim of the '785 Patent.

## FOURTH COUNTERCLAIM
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '801 PATENT

15.     To the extent not inconsistent, PropX incorporates by reference the allegations of its Answer and Defenses as if fully set forth herein.

16.     PropX is not infringing and has not infringed any properly construed, valid claim of the '801 Patent.

17.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., PropX requests a declaration by the Court that it does not infringe any claim of the '801 Patent.

## FIFTH COUNTERCLAIM
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '929 PATENT

18.     To the extent not inconsistent, PropX incorporates by reference the allegations of its Answer and Defenses as if fully set forth herein.

19.     PropX is not infringing and has not infringed any properly construed, valid claim of the '929 Patent.

20.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., PropX requests a declaration by the Court that it does not infringe any claim of the '929 Patent.

## SIXTH COUNTERCLAIM
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '518 PATENT

21.     To the extent not inconsistent, PropX incorporates by reference the allegations of its Answer and Defenses as if fully set forth herein.

22.     One or more of the claims of the '518 Patent are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

23.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., PropX requests a declaration by the Court that the claims of the '518 Patent are invalid for failure to comply with one or more of the requirements of the patent laws, including, but not, limited to 35 U.S.C. §§ 102, 103, and/or 112, and the rules and laws pertaining to those provisions.

## SEVENTH COUNTERCLAIM
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '626 PATENT

24.     To the extent not inconsistent, PropX incorporates by reference the allegations of its Answer and Defenses as if fully set forth herein.

25.    One or more of the claims of the '626 Patent are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

26.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., PropX requests a declaration by the Court that the claims of the '626 Patent are invalid for failure to comply with one or more of the requirements of the patent laws, including, but not, limited to 35 U.S.C. §§ 102, 103, and/or 112, and the rules and laws pertaining to those provisions.

## EIGHTH COUNTERCLAIM
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '785 PATENT

27.    To the extent not inconsistent, PropX incorporates by reference the allegations of its Answer and Defenses as if fully set forth herein.

28.    One or more of the claims of the '785 Patent are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

29.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., PropX requests a declaration by the Court that the claims of the '785 Patent are invalid for failure to comply with one or more of the requirements of the patent laws, including, but not, limited to 35 U.S.C. §§ 102, 103, and/or 112, and the rules and laws pertaining to those provisions.

## NINTH COUNTERCLAIM
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '801 PATENT

30.    To the extent not inconsistent, PropX incorporates by reference the allegations of its Answer and Defenses as if fully set forth herein.

31.     One or more of the claims of the '801 Patent are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

32.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., PropX requests a declaration by the Court that the claims of the '801 Patent are invalid for failure to comply with one or more of the requirements of the patent laws, including, but not, limited to 35 U.S.C. §§ 102, 103, and/or 112, and the rules and laws pertaining to those provisions.

## TENTH COUNTERCLAIM
## <u>DECLARATORY JUDGMENT OF INVALIDITY OF THE '929 PATENT</u>

33.     To the extent not inconsistent, PropX incorporates by reference the allegations of its Answer and Defenses as if fully set forth herein.

34.     One or more of the claims of the '929 are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

35.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., PropX requests a declaration by the Court that the claims of the '929 Patent are invalid for failure to comply with one or more of the requirements of the patent laws, including, but not, limited to 35 U.S.C. §§ 102, 103, and/or 112, and the rules and laws pertaining to those provisions.

## <u>DEMAND FOR JURY TRIAL</u>

PropX respectfully requests a jury trial on any issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendant PropX prays that the Court deny all Plaintiffs' request for relief and respectfully requests judgment as follows:

A.      Judgment finding that PropX has not infringed and is not infringing any claim of the Patents-in-Suit;

B.      Judgment that each claim of the Patents-in-Suit is invalid;

C.      Judgment finding this case to be an exceptional case as against PropX, and awarding PropX its reasonable costs in this action, including attorneys' fees and prejudgment and postjudgment interest; and

D.      Such other and further relief, both general and special, at law or in equity, as the Court deems just and proper.

Date:  April 20, 2017                    Respectfully Submitted

                                          By   /s/ *Charles B. Walker, Jr.*
                                              Charles B. Walker (Texas Bar No. 00794808)
                                              charles.walker@nortonrosefulbright.com
                                              Mark Eberhard (Texas Bar No. 24092375)
                                              mark.eberhard@nortonrosefulbright.com
                                          NORTON ROSE FULBRIGHT US LLP
                                          Fulbright Tower
                                          1301 McKinney, Suite 5100
                                          Houston, Texas 77010-3095
                                          Tel:   (713) 651-5151
                                          Fax:   (713) 651-5246

                                          *ATTORNEYS FOR DEFENDANTS*
                                          *PROPPANT EXPRESS INVESTMENTS, LLC;*
                                          *and PROPPANT EXPRESS SOLUTIONS, LLC*

**CERTIFICATE OF SERVICE**

I certify that on April 20, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.  Any other counsel of record will be served in accordance with the FEDERAL RULES OF CIVIL PROCEDURE.

_____ /s/ *Charles B. Walker, Jr.*_____